THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID D.,[1]                                    )
                                               )
Plaintiff,                                      )
                                               )        Case No. 23 C 890
v.                                              )
                                               )        Magistrate Judge Laura K. McNally
FRANK BISIGNANO,                                )
                                               )
Commissioner of Social Security,[2]             )
                                               )
Defendant.                                      )

## ORDER[3]

Before the Court is Plaintiff David D.'s memorandum in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying his application for disability benefits (Dkt. 12: Pl. Mem. in Support of Summ. J.:

"Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On February 14, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 6.)

judgment (Dkt. 17: Def. Mot. for Summ. J.; Dkt. 18: Def. Mem. in Support of Summ. J.: "Resp.")

## I.  Procedural History

Plaintiff filed his application for disability insurance benefits on December 1, 2014. (R. 146-52.) He alleged that his onset date was March 13, 2013. (*Id.*) His date last insured was December 31, 2018. (R. 1214.) After a hearing, the district court remanded the ALJ's decision on May 12, 2020. (R. 899-919.) After a second hearing, the Commissioner voluntarily agreed to remand the case for further consideration in October 2021. (R. 1292.) The Appeals Council's remand order directed the ALJ to give more consideration to the medical opinions, give further consideration to Plaintiff's RFC and, if warranted, obtain supplemental information from the vocational expert. (R. 1296-1302.)

On September 29, 2022, Plaintiff appeared for a hearing before ALJ Edward Studzinski. (R. 1239-62.) The ALJ heard testimony from Plaintiff, who was represented by an attorney, and a vocational expert. On October 19, 2022, the ALJ issued an opinion finding that Plaintiff was not disabled from his onset date until his date last insured. (R. 1211-1231.)[4]

---

[4] Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction. Therefore after 60 days the ALJ's decision became the final decision of the Commissioner. (Dkt. 1.) 20 C.F.R. § 404.984(d).

## II.     ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One the ALJ found that Plaintiff had not engaged in substantial gainful activity since his onset date. (R. 1214.) At Step Two, the ALJ found that Plaintiff had the severe impairments of hip disorder, right upper extremity neuropathy, spinal disorder, left wrist disorder, and obesity. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 1215.) Before Step Four, the ALJ determined that though the date last insured, Plaintiff had the residual functional capacity ("RFC") to:

> Lift and/or carry up to 10 pounds occasionally and lighter weights frequently, and had no limitations in this total ability to sit throughout an eight-hour workday. The claimant could stand and/or walk off and on for a total of two out of eight hours. The claimant needed to alternate his position from sitting, such that he stood and/or walked for no more than one or two minutes out of every half hour. While doing so, he would not need to be off task. The claimant could occasionally climb ramps and stairs, and he could occasionally stoop, kneel, balance, crouch and crawl, but he could never climb ladders, ropes or scaffolds. He could frequently reach in all directions with his upper extremities, and could occasionally push, pull, or operate foot controls with his left lower extremity. He could frequently use his hands to perform fine or gross manipulation, but cannot perform forceful grasping or torquing with either hand. The claimant is limited to working in non-hazardous environments, *i.e.,* no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. He does not need an ambulatory aide to stand or walk briefly when alternating his position from sitting, but should be allowed to use a cane at all times when walking for longer than two minutes or when getting to or from the workstation.

(R. 1217.)

At Step Four, the ALJ determined Plaintiff could not perform his past relevant work as an order picker. (R. 1229.) At Step Five the ALJ found that there were other jobs in the national economy that Plaintiff could perform including telephone quote clerk, charge account clerk, and document preparer. (R. 1230.) Therefore, the ALJ found that Plaintiff was not disabled prior to his date last insured. (R. 1231.)

III.    **Legal Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of

4

disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar

minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.    Analysis

The crux of Plaintiff's argument is that the ALJ failed to properly account for his physical limitations caused by pain. The pain occurred at various times in his cervical spine, left hip, hands, and shoulders. (R. 175-83.)[5] Specifically, Plaintiff first contends that the ALJ improperly evaluated the medical opinions. (Pl. Mem. at 1.) Second, he argues that the RFC was not supported by substantial evidence because of mistakes made weighing the medical opinions. (*Id.*) Finally, he contends the ALJ's evaluation of

---

[5] The record is not entirely clear about the source(s) of Plaintiff's pain. Plaintiff alleges an onset date of March 2013, but a number of his complaints seem to stem from a car accident in June 2014. Six months after that accident, Plaintiff applied for disability benefits, listing the reasons he could not work as a cervical spine injury, left and right torn rotator cuff tears, tendonitis in both wrists, nerve damage in his left elbow, and that he needed his left hip replaced. (R. 176.) Plaintiff makes no allegations about impairments or limitations he experienced between his onset date and his car accident, although he told a neurosurgeon his neck pain began in 2013 due to a job where he had to "pick parts." (R. 1220.) The ALJ also noted that record reflects that Plaintiff occasionally attributed his pain to a prior workers' compensation injury that is not documented in the medical evidence. (*Id.*)

his subjective symptoms was flawed. (*Id.*) Because the ALJ supported his RFC determination with substantial evidence, the Court upholds the Commissioner's decision.

### A.     The ALJ Properly Evaluated the Medical Opinions

Because Plaintiff filed his application prior to March 27, 2017, the ALJ was required to apply the then-applicable treating-physician rule. That rule "require[d] ALJs to give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019), quoting 20 C.F.R. § 404.1527(c)(2).

Under the treating-physician rule, when ALJs do not assign controlling weight to a treating physician opinion, they will consider several factors in determining the weight to give the opinion, including considering the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the medical opinion with the record, and the physician's specialization. 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5). An ALJ must provide "good reasons" for the weight assigned to a treating physician opinion. 20 C.F.R. § 404.1527(c)(2). Yet an ALJ is not required to discuss every factor listed in the regulation; rather, an ALJ need only "minimally articulate" the reasons for the weight

assigned to a medical opinion. *See Collins v. Berryhill*, 743 F. App'x 21, 25, (7th Cir. 2018), *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

The medical record contains five opinions, two from Plaintiff's treating internist, one from his neurologist, and two from state agency doctors. On January 9, 2014, Plaintiff's treating internal medicine doctor, Umang Patel, M.D., opined that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, and stand or walk for less than one hour and sit for less than two hours in an eight-hour workday. (R. 408.) He also indicated that Plaintiff could occasionally use his hands to handle, finger, or feel, generally never perform postural activities, and could never push or pull with his hands or feet. (*Id.*)

On January 16, 2016, Dr. Patel opined Plaintiff could sit for 30 minutes before needing to get up, stand for 15 minutes before needing to sit down, and sit, stand, and walk less than 2 hours in an eight-hour workday. (R. 758.) The doctor further opined that Plaintiff needed to walk around for six minutes every 30 minutes in a workday, that he be allowed to shift positions at will, that he would need to take unscheduled 15-minute breaks every two- to- three hours, and that he would need to elevate his legs for 30 percent of the workday. (*Id.*) Additionally, Dr. Patel opined that Plaintiff could rarely lift less than 10 pounds, never engage in most postural activities, and reach, grasp, and engage in fine manipulation for no more than ten percent of the workday. (R. 759.)

The ALJ began his analysis of Dr. Patel's opinions by explaining that they were not given controlling weight because they were "not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record." (R. 1223). In further accordance with the regulations, the ALJ more than minimally articulated the reasons he gave Dr. Patel's opinions no weight. In making this determination, the ALJ discussed all of the 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5) factors: he acknowledged that Dr. Patel was Plaintiff's primary care provider, had treated Plaintiff for various ailments since 2005, did not have any medical specialty, had treated Plaintiff specifically for neck, shoulder, and elbow pain for four months at the time of the first opinion, had examined Plaintiff generally but did not perform any specialized testing, and did not refer Plaintiff for a functional capacity assessment. (R. 1223, 1225.) Dr. Patel also did not have any particular understanding of Social Security regulations. (R. 1223.)

The ALJ then discussed in depth the reasons that Dr. Patel's opinions were neither supported by nor consistent with the entirety of the medical evidence. With respect to the January 2014 opinion, the ALJ first noted that it consisted only of "check marks," without any supporting information or explanation. (R. 1224.) The ALJ offered a number of reasons to give the opinion no weight:

- The opinion diagnosed Plaintiff only with a rotator cuff injury and cervical spine pain, neither of which supported Dr. Patel's assessment of Plaintiff's sitting, standing, and walking limitations (*Id.*);

- The significant limitations in the opinion were not noted in Dr. Patel's treatment records and appeared to be based primarily on Plaintiff's subjective complaints. To that end the ALJ explained that Dr. Patel's objective examinations did not document any deficits in the use of hands, sitting, standing, walking, or performing postural activities (*Id.*);

- Examination notes both contemporaneous to the opinion as well as from prior dates demonstrated some tenderness in the neck and trapezius and straightening of the cervical spine, but normal gait, no history of falls, no clubbing or edema, intact strength, and intact sensation (*Id.*);

- Treatment records from other doctors also did not show objective clinical findings to support significant limitations (*Id.*); and

- Dr. Patel's treatment of Plaintiff was conservative, limited to imaging, physical therapy, and medication management. (*Id.*)

The ALJ explained that he gave Dr. Patel's January 2016 opinion no weight because like with the 2014 opinion, neither Dr. Patel's treatment notes nor those from other doctors contained such significant limitations. (R. 1225.) The ALJ also noted that although Dr. Patel wrote that he had treated Plaintiff every three months since 2005 (which would be approximately 45 appointments), the record only reflected 16 total appointments over an 11-year period from March 2005 to March 2016. (*Id.*) Of these, nine of those visits occurred during the relevant time period, five of which occurred between the dates of Dr. Patel's two opinions. (*Id.*) And yet, Dr. Patel provided no explanation for the change in functional limitations from 2014 to 2016, nor did any treatment records show a significant difference in Plaintiff's examinations. (*Id.*)

Over the course of another two pages, the ALJ offered a detailed comparison between the limitations contained in Dr. Patel's 2016 opinion and other objective and

10

subjective evidence in the record, noting that even the remanding district court recognized that Dr. Patel did not cite specific supporting evidence for his opinion. (R. 1225-27.) For example, while Dr. Patel opined that Plaintiff had crepitus and joint instability, he did not identify which joint(s) were affected, and those findings were also absent from his treatment notes or records from other providers. (*Id.*) Similarly, while Dr. Patel's opinion stated that Plaintiff had "weakness," there were numerous treatment notes documenting normal muscle strength and tone. (*Id.*) With respect to Dr. Patel's opinion that Plaintiff had a limited range of motion, the ALJ explained that while some treatment notes did document unspecified limitations, such findings were not consistently seen in treatment records. (*Id.*)

The ALJ also considered the consistency of Dr. Patel's opinion. He weighed evidence of Plaintiff's various limitations concerning Plaintiff's hands and arms as well as his ability to stand, walk, and sit against examination and treatment notes that documented either normal findings or those less severe than Dr. Patel's opinions suggested. For example, the ALJ pointed out that Dr. Patel's extreme limitations in Plaintiff's ability to lift, reach, handle, and finger were at odds with EMG results showing only mild neuropathy of the right elbow and no noted abnormality with the hands. (R. 1225-26.) Dr. Patel's opinion that Plaintiff needed to elevate his legs during the day was unsupported by either subjective reports or objective clinical findings. (R. 1227.) The ALJ noted that imaging of Plaintiff's shoulders in 2020, well after the date

11

last insured, showed minimal degenerative changes, which did not suggest greater limitations than those in the RFC existed prior to December 31, 2018. (R. 1221.)

With respect to Plaintiff's alleged limitations with his hands, the ALJ pointed to records showing that Plaintiff was able to use his hands and arms to drive, feed himself, shop, mow the lawn and at times operate a snowblower. (R. 1222.) With respect to Dr. Patel's extreme limitation in sitting and Plaintiff's supposed need to walk for six minutes every thirty minutes, the ALJ found that nothing in the record supported his conclusion. (R. 1223.) Given this analysis, Plaintiff's disagreements amount to no more than an impermissible request to reweigh the evidence.

Similarly, the ALJ also supported with substantial evidence his decision to give the opinion of neurologist Rodrigo Ubilluz, M.D., little weight. (R. 1227.) In May 2017, Dr. Ubilluz opined that Plaintiff could not work 6-8 hours in a workday due to cervical spinal stenosis, joint disorder, cervicalgia, degenerative joint disease in the arms, and tendonitis in the wrists. (R. 796-99.)

The ALJ initially explained that Dr. Ubilliuz's opinion was "not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record" and therefore declined to give it controlling weight. (R. 1227). The ALJ discussed that Dr. Ubilluz was a neurologist who began treating Plaintiff more than three years after his onset date. (R. 1227.) He noted that Plaintiff had a total of seven visits over a ten-month period and

12

that the doctor performed general examinations and EMG testing but did not perform any specialized functional tests. (*Id.*) After considering these 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5) factors, the ALJ explained that Dr. Ubilluz's opinion was neither well supported nor consistent with the medical record, and thus was only entitled to little weight.

Specifically, the ALJ explained that nothing in Dr. Ubilluz's treatment records indicated that Plaintiff would be unable to work a full day. To that end, the ALJ noted that despite Plaintiff's significant complaints of pain in his neck and upper extremities and hand weakness, he did not appear to be in acute distress during treatment visits. (R. 1228.) The ALJ acknowledged that the record did show some intermittent and consistent abnormalities, such 4/5 arm strength, decreased equal and symmetrical reflexes in the arms, and pain in the hips when raised. He also noted an EMG (nerve conduction testing) that found some abnormalities in Plaintiff's ulnar (upper arm) nerves. (*Id.*) But this evidence did not suggest a complete inability to work as Dr. Ubilluz opined, particularly when weighed against Plaintiff's consistently normal motor function, sensation, reflexes, strength, and gait. (*Id.*) The ALJ also pointed out the doctor's treatment was conservative, consisting primarily of medication management, and that Plaintiff did well on medication. (*Id.*)

In addition the ALJ noted that Dr. Ubilluz provided no support or explanation for each limitation despite being asked to do so. (R. 1228.) His opinion that Plaintiff was

completely unable to drive, cook, vacuum, or perform similar activities was inconsistent with Plaintiff's own reports that he could perform these tasks. (R. 1222.) The doctor did not identify specific functional limitations related to Plaintiff's ability to sit, stand, walk, lift, or use his upper extremities but only offered the absolute opinion that Plaintiff was unable to work a six- to- eight-hour workday. (R. 1228.)

In light of the ALJ's detailed and thoughtful consideration of the treating doctors' opinions, the Court finds that substantial evidence supports the ALJ's decision to give them no or little weight.

### B.    Substantial Evidence Supports the RFC

The ALJ considered and discussed at length both subjective and objective evidence before determining Plaintiff's RFC. He weighed positive and negative test results, treatment notes, examination findings, and generally conservative treatment as well as Plaintiff's own subjective testimony and function report before determining that he was able to perform sedentary work with additional postural limitations.

Plaintiff does not point out any line of evidence the ALJ ignored or omitted. Instead, he argues that after rejecting all the medical opinions in the record, the ALJ was left with an "evidentiary deficit" that he replaced with a faulty lay interpretation of the evidence. The Court disagrees and finds that substantial evidence supports the RFC.

Contrary to Plaintiff's characterization, the ALJ did not reject all of the opinions in the record. Instead, the ALJ gave "some weight" to the state agency medical opinion

14

that after his hip replacement surgery in July 2015 Plaintiff could perform light work with additional postural limitations, including occasionally climbing stairs, balancing, stooping, kneeling, crouching, or crawling and never climbing ropes or scaffolds. (R. 1222, *citing* R. 72-73.) The ALJ explained he gave the opinion only some weight because there was new medical evidence to support additional limitations. To that end, the ALJ reduced Plaintiff's RFC to the sedentary level and also added limitations to account for his upper extremity impairments, and his use of a cane. (*Id*.)

Plaintiff appears to suggest that because the ALJ found the agency doctors' opinions "inadequate to account for all of Plaintiff's limitations" (Pl. Mem. at 9), the ALJ's was wrong to rely on the opinion even in part to support the RFC. But the fact that the ALJ added more restrictions to the RFC beyond those recommended by the state agency doctors does not negate the weight he gave the opinions. Instead, as numerous courts in this circuit have found, it shows "that the ALJ gave 'reasoned consideration' to the evidence." *Langley v. O'Malley*, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024). *See also, e.g., Burmester*, 920 F.3d at 510 (describing a "finding more limiting than that of any state agency doctor or psychologist" as "illustrating reasoned consideration" of the plaintiff's evidence); *Gale L-S v. Kijakazi*, 2023 WL 2746003, at *6 (N.D. Ill. March 31, 2023) (holding that although the ALJ did not agree that the plaintiff's requested accommodations were necessary, the fact that he included more

restrictive limitations than the agency reviewers suggested indicated he "fully considered the evidence" in making the determination).

In this case, the ALJ explained the basis for the additional restrictions in the RFC. He provided for Plaintiff's testimony about his occasional use of a cane even though the record did not document medical need for an assistive device. (R. 1221.) He accounted for Plaintiff's complaints about hand weakness by limiting him to frequent fine and gross manipulation and no forceful grasping after weighing evidence from EMG testing and X-rays that showed, at most, mild abnormalities. (R. 1220, 1222.)

Plaintiff separately argues that the ALJ did not offer evidence to support the limitation that Plaintiff be allowed to change positions for one-to-two minutes out of every half-hour. (Pl. Mem. at 8-9.) Plaintiff characterizes this limitation as the ALJ "requiring" the ability to stand for 1 to 2 minutes out of every thirty but that is incorrect. The ALJ explained that he included a sit-stand option in recognition of Plaintiff's testimony about difficulty with prolonged sitting; the RFC did not require Plaintiff to alternate sitting and standing. (R. 1227.)

Plaintiff also contends that the ALJ wrongly omitted a limitation on sitting, given that he had hip dysfunction and necrosis of the femur. Plaintiff's contention that his hip dysfunction necessitated a limitation on his ability to sit has no support in the record. As it is well-established, a diagnosis is not sufficient on its own to show the existence of any functional limitations or even symptoms. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-

16

46 (7th Cir. 2005) (explaining that a claimant's showing of the existence of an impairment does not equate with a showing that the claimant suffers from common symptoms of that impairment without further evidence); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities.").

Plaintiff objects to the ALJ finding he could sit long enough to perform sedentary work but also disagrees with the ALJ's giving him the option to stand every thirty minutes. The ALJ supported with substantial evidence both aspects of the RFC.

He explained that the record did not demonstrate consistent, ongoing complaints of difficulty sitting. (R. 1226.) The ALJ compared Plaintiff's function report that he sat all day with his testimony at his 2017 hearing that he could sit for 10 to 15 minutes and his 2021 hearing where he claimed he could not sit for longer than 5 minutes at a time. (*Id.*) He pointed out that Plaintiff admitted that he drove, and that it was unlikely that he stopped every 5, 10, or 15 minutes to stop and get out of his car. (*Id.*) The ALJ also noted that at his prior hearings, Plaintiff sat for up to thirty minutes without any distress or needing to change position. (R. 1221). And yet, despite the ALJ finding no objective evidence that Plaintiff was limited in his ability to sit, he considered Plaintiff's subjective complaints and added a sit-stand option to the RFC.

In short, the burden remains with Plaintiff at the RFC stage, and aside from Drs. Patel and Ubilluz's opinions, which the ALJ appropriately discounted, the Court finds no support for the extensive restrictions Plaintiff seeks. The ALJ did exactly what he

was supposed to do: weighed the medical evidence, considered Plaintiff's testimony, and drew reasonable inferences from the record to carry out his function as factfinder and crafted Plaintiff's RFC based on the record evidence. *See David N. v. Bisignano*, No. 23 C 1819, 2025 WL 2785363, at *4 (N.D. Ill. Sept. 30, 2025); *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) ("The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record.").

### C. The ALJ's Subjective Symptom Evaluation was not Patently Wrong

Finally, the ALJ did not err in his determination that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence in the record. The regulations instruct ALJs to consider several factors in evaluating a claimant's subjective statements, including the intensity and limiting effects of symptoms, treatment and efficacy, work during disability period, daily activities, and statements inconsistent with the record. 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025). The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* (internal citations and quotations omitted). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

In this case, the ALJ's consideration of Plaintiff's subjective symptoms was not patently wrong. The ALJ acknowledged Plaintiff's various and ongoing complaints of pain primarily in his hip, neck, wrist, and fingers. (R. 1218.) He explained, however, that both objective and subjective evidence did not support Plaintiff's allegations that his pain rendered him completely unable to work. In making this determination, the ALJ considered medical tests and treatment notes that documented, at times, mild to moderate abnormalities with normal results.

As one example, the ALJ discussed evidence concerning Plaintiff's hip disorder that eventually led him to have hip replacement surgery. (R. 1219-20.) Although Plaintiff subsequently complained that his hip pain returned, the ALJ noted that a later examination of his hip was normal and that he received conservative treatment consisting of pain medication. (*Id*.) Similarly, the ALJ weighed Plaintiff's complaints of neck and shoulder pain against a 2014 MRI that was "essentially okay" and 2016 treatment notes from a neurosurgeon that showed good range of motion in the neck, full motor strength, intact gait and intact senses. (R. 1220.) The ALJ further explained that while an MRI and EMG at the time showed some abnormalities, the surgeon recommended pain management and not surgery. (R. 1221.)

The ALJ also explained that Plaintiff's own testimony and activities of daily living did not support his subjective allegations. For example, he noted that Plaintiff's contention that he could not sit for more than five or ten minutes was at odds with a

long car trip out of state. (R. 1218.) Despite his complaints about arm and hand pain and weakness, Plaintiff admitted being able to drive, mow the lawn once a month, shop, prepare simple meals, and use his hands effectively to handle funds, use his cellphone, and use the internet. (R. 1216, 1222.) The ALJ also specifically noted that Plaintiff's allegation that he needed to lie down twice a day did not have any support in the record and was further belied by his ability to sit comfortably and pain free at prior hearings. (R. 1221.)

In short, while Plaintiff may disagree with the way the ALJ considered his subjective complaints, the Court will not reweigh the evidence. The ALJ supported with substantial evidence his consideration of Plaintiff's subjective symptoms and his determinations were not patently wrong.

## CONCLUSION

For the reasons explained above, the Court grant's Defendant's motion for summary judgment (Dkt. 17) and denies Plaintiff's memorandum in support of remand (Dkt. 12.)

**SO ORDERED.**

ENTER:

_____

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: January 27, 2026**